803 So.2d 125 (2001)
STATE of Louisiana
v.
Marie A. LILES.
No. 01-KA-573.
Court of Appeal of Louisiana, Fifth Circuit.
November 27, 2001.
*127 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Thomas J. Butler, Nancy Miller, Assistant District Attorneys, Gretna, LA, Counsel for State.
Bruce G. Whittaker, New Orleans, LA, Counsel for defendant-appellant.
Court composed of Judges SOL GOTHARD, THOMAS F. DALEY and CLARENCE E. McMANUS.
McMANUS, Judge.
In this matter, Defendant Marie A. Liles appeals the denial of her Motion to Suppress Evidence. We find no error in the trial judge's ruling, and therefore affirm Defendant's conviction and sentence, and remand the matter for correction of one error patent.

STATEMENT OF THE CASE
On October 27, 2000, Defendant-Appellant, Marie A. Liles, was charged by Bill of Information with one count of possession of cocaine and one count of possession of hydrocodone, both in violation of LSA-R.S. 40:967 C. On December 15, 2000, the Defendant was arraigned and pled not guilty. The Defendant filed a Motion to Suppress the Evidence, which was heard and denied on April 16, 2001. On April 17, 2001, the Defendant withdrew her plea and entered a plea of guilty to both counts of possession under State v. Crosby,[1] reserving her right to appeal the ruling on the Motion to Suppress Evidence. The Defendant was sentenced to two years at hard labor on each count, to run concurrently, and was also ordered to pay fines and court costs totaling $756.50. The trial court suspended the sentence and placed the Defendant on active probation for two years.

FACTS
The following facts were developed from the testimony at the suppression hearing. Sergeant Jason Renton of the Jefferson Parish Sheriff's Office Narcotics Division was the only person to testify at the Motion to Suppress. Renton testified that he had been a deputy for over ten years and that he had been a narcotics agent for all but one of these years. Regarding this case, he stated that he had initially received a tip from a confidential source that Jeffery Clark was selling marijuana and Ecstasy from his home in Metairie. He testified that he did not know the name of the confidential source. However, Renton stated that the source had given him seven pieces of information, and that he had investigated four of these and made arrests in all four.
Renton conducted surveillance on Clark's apartment on Yale Street around 9:00 p.m. on October 19, 2000. He testified that he had observed several people coming and leaving the apartment, but had been unable to follow any of these individuals until another officer arrived to continue the surveillance. Renton witnessed the Defendant and Daniel Landry pull up in a Toyota Camry, then enter the apartment. Renton testified that once his partner arrived, *128 he was able to follow the Defendant and Landry when they left Clark's apartment. Renton stated that the Defendant and Landry had been at the apartment for approximately "five minutes or less."
Renton followed the two onto Veterans Boulevard heading toward Kenner; he pulled their car over not far from Clark's apartment. The Defendant was driving, and he ordered her out of the car. As she walked to the back of his vehicle, Renton asked her some questions. He informed her that he was conducting a narcotics investigation and asked her where she had been coming from. According to Renton, the Defendant said that she and Landry were coming from the house of a friend named Jeffery Clark. Renton next asked her how long she thought they had been at Clark's apartment. She stated that they had been there for "a good two hours" watching a movie.
Officer Renton then spoke with Landry. Landry's story contradicted Defendant's. According to Renton, Landry stated that they had been at Clark's apartment no longer than five minutes. Renton next asked Landry whether the car was his, and he responded negatively. Renton then asked Landry whether there were any narcotics in the car, and he responded negatively.
Renton then advised Landry of his constitutional rights per Miranda. He testified that he smelled marijuana on Landry's clothing; he asked Landry whether he had any drugs on his person.[2] According to Renton, Landry stated that he might have a "roach" in a cigarette pack. Renton removed a Marlboro Light cigarette pack containing cigarettes and a marijuana "roach" from Landry's left pants pocket.
Renton then walked back over to Defendant and informed her that Landry was being arrested because he had marijuana on his person. He next advised the Defendant of her constitutional rights under Miranda and asked her whether she had any narcotics in her vehicle; she responded negatively. Renton testified that he next asked the Defendant whether she had any illegal narcotics on her person because he was going to call for a female officer to come and search her. According to Renton, she responded that it would not be necessary, at which time she removed from her bra a cellophane wrapper containing four tablets that she claimed were generic Vicodin.
Next, Renton asked the Defendant whether he could search her vehicle to look for other illegal narcotics. Defendant responded that there were no narcotics in the car, but granted Renton permission to search the vehicle. Pursuant to the vehicle search, Renton found cocaine in the Defendant's purse.
In his reasons for denying the Motion to Suppress, the trial judge observed that, "when a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot the officer may briefly stop the person and make reasonable inquiries." The judge further specifically found that Officer Renton's initial suspicion of Defendant and Landry had, based on the parties'"conflicting answers," the smell of marijuana, and Landry's admissions, ultimately developed into probable cause [to believe that the two had (or were about to commit) an offense].

ASSIGNMENT OF ERROR NUMBER ONE
As her first assignment of error, the Defendant asserts that the trial court erred in denying the Motion to Suppress.
*129 The Defendant argues there was no reasonable suspicion to justify the initial investigatory stop and, thus, the contraband seized was the fruit of an illegal search. The Defendant in particular claims that there was no corroboration of any salient facts of the tip given by the informant. The Defendant also claims that the informant only told Renton that Jeffery Clark was distributing narcoticsthat neither the informant nor Renton had any prior knowledge concerning the Defendant. Therefore, Defendant argues, the uncorroborated tip did not provide reasonable cause to justify the stop of her vehicle.
The Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. If evidence was derived from an unreasonable search or seizure, the proper remedy is exclusion of the evidence from trial. State v. Benjamin, 97-3065 (La.12/1/98), 722 So.2d 988, 989 (citing Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914); State v. Tucker, 626 So.2d 707 (La.1993)). However, the right of law enforcement officers to stop and interrogate one reasonably suspected of criminal conduct is recognized by LSA C.Cr.P. art. 215.1,[3] as well as state and federal jurisprudence. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Belton, 441 So.2d 1195 (La.1983). The right to make an investigatory stop and question the particular individual detained must be based upon reasonable suspicion to believe that he has been, is, or is about to be engaged in criminal activity. State v. Miskel, 95-584 (La.App. 5 Cir. 1/30/96), 668 So.2d 1299, 1302. "Reasonable suspicion" is something less than probable cause and is determined under the facts and circumstances of each case by whether the officer had sufficient facts within his knowledge to justify an infringement on the individual's right to be free from governmental interference. State v. Sanders, 97-892 (La.App. 5 Cir. 3/25/98), 717 So.2d 234, 240, writ denied, 98-1163 (La.9/25/98), 724 So.2d 774.
The officer "`must have a particularized and objective basis for suspecting the particular person stopped of criminal activity'" and must be able to articulate the specific facts upon which his suspicion is based. State v. Huntley, 97-0965 (La.3/13/98), 708 So.2d 1048, 1050, quoting United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981). The facts upon which an officer bases an investigatory stop should be evaluated in light of the circumstances surrounding the incident. A reviewing court must take into consideration the totality of the circumstances and give deference to the inferences and deductions of a trained police officer that might elude an untrained person. State v. Huntley, 708 So.2d at 1049. An anonymous tip, corroborated by police surveillance, can supply enough reliability to support an investigatory stop. Alabama v. White, 496 U.S. 325, 333, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). However, the anonymous tip must provide a basis for reasonable suspicion, for instance, "sufficiently particular information concerning defendant's future actions." State v. Robertson, 97-2960 (La.10/20/98), 721 So.2d 1268, 1270. A non-predictive anonymous tip, paired with either independent police corroboration of the readily observable facts or police observation *130 of unusual or suspicious conduct, can provide the police with reasonable suspicion to temporarily detain the suspect. Id. at 1270, 1271; State v. Morgan, 00-1501 (La.App. 5 Cir. 3/28/01), 783 So.2d 514, 519.
Finally, at a hearing to determine the constitutionality of any particular stop, the State bears the burden of proof in establishing the admissibility of evidence seized without a warrant. LSA-C.Cr.P. art. 703D. The trial court's application of the above principles, the trial court's decision to deny a motion to suppress, is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression. State v. Williams, 98-1006 (La.App. 5 Cir. 3/30/99), 735 So.2d 62, 74, writ denied, 99-1077 (La.9/24/99), 747 So.2d 1118.
The issue before us, therefore, is whether there existed a reasonable suspicion for Officer Renton to conduct an investigatory stop of the Defendant and her companion. Renton testified that he received information from a confidential source that one Jeffery Clark was distributing large amounts of marijuana and Ecstasy. He was given a name, an address and an apartment number. On cross-examination, Renton testified about the reliability of the confidential source. He acknowledged that he did not know the identity of the individual making the phone-in complaint. However, Renton explained that this confidential source had given him information seven times in the past, and that further investigation in four instances, as many cases as he had been able to investigate, had resulted in arrests in all four cases.
After having received a tip in the instant case, Renton checked the number on the license plate of the vehicle parked at the residence to verify Clark's name and the address. He testified that while he had been parked within sight of the residence, he observed several vehicles coming and leaving the residence over the course of approximately an hour and one-half, during which time each vehicle remained at the address from ten minutes to a half hour.
Renton testified that he followed Defendant and Landry after they left Clark's residence, and that the eventual "investigatory vehicle stop" had been justified based on the confidential source's information, which had "proven to be very reliable and credible with all the other information and based upon all the traffic that I observed from the residence at that time."
We agree with the trial judge's finding that the initial stop of Defendant and Landry was lawful. The anonymous tip, coupled with behavior that was, in Officer Renton's experience, indicative of criminal activity, plainly gave Officer Renton the right to stop and question the two individuals.
Further, having found that the initial stop was lawful, we find that the stop was sufficiently limited in scope. Renton's questioning of Defendant and Landry continued only as long as his suspicions were further aroused by their inconsistent answers to his questions, which statements also contradicted what Renton had actually observed.
Finally, we also agree with the trial judge's finding that the initial reasonable suspicion ultimately ripened into the probable cause required to allow seizure of the contraband found on the persons of the suspects and in Defendant's purse. Once Renton had begun to question the two, the noticeable odor of marijuana, the couple's conflicting stories, and Landry's almost immediate admission that he was in possession of some marijuana plainly provided *131 the probable cause to allow seizure of the contraband found.
The trial judge was correct to have denied the Motion to Suppress. This assignment of error is without merit.

ERROR PATENT DISCUSSION[4]
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).
The trial court informed the Defendant of the two-year prescriptive period; however, the court did not inform the Defendant when this period began to run as required under LSA C.Cr.P. art. 930.8. This advisal is incomplete as LSA-C.Cr.P. art. 930.8 provides that a defendant has two years from the day the judgment becomes final in which to file an application for post-conviction relief. Therefore, the district court is ordered to send written notice of the prescriptive period (along with an advisal of when the period begins to run) to Defendant within ten days of the rendering of this opinion, then to file written proof in the record that Defendant has received said notice. See State v. Boles, 99-662 (La.App. 5 Cir. 11/10/99), 750 So.2d 1059, 1062.
Therefore, for the above reasons, we affirm the trial judge's denial of Defendant's Motion to Suppress, and affirm the conviction and sentence herein. The matter is remanded to allow the trial judge to correctly inform the Defendant of the commencement of the delays in which to file applications for post conviction relief.
AFFIRMED; REMANDED FOR CORRECTION OF PATENT ERROR.
NOTES
[1] State v. Crosby, 338 So.2d 584 (La.1976).
[2] It is not clear from the record whether Officer Renton advised Landry of his constitutional rights before he smelled the odor of marijuana or after.
[3] LSA-C.Cr.P. art. 215.1 provides in pertinent part:

A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
[4] Defendant's assignment of error No. 2.